UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re Ex Parte Application of BROADCOM CORPORATION, a Delaware corporation, and AVAGO TECHNOLOGIES INTERNATIONAL SALES PTE. LIMITED, a business entity formed under the laws of Singapore<br><br>     Applicants,<br><br><br>for an Order Pursuant to 28 U.S.C. Section 1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings, | MISC. ACTION NO. |

## BROADCOM'S AND AVAGO'S *EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 GRANTING LEAVE TO OBTAIN  DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

Applicants Broadcom Corporation ("Broadcom") and Avago Technologies International Sales Pte. Limited ("Avago") (collectively "Applicants") apply to the Court *ex parte* for an order pursuant to 28 U.S.C. § 1782 granting Applicants leave to obtain targeted discovery from Harman International Industries, Inc. ("Harman International") and Harman Becker Automotive Systems, Inc. ("Harman Becker-US") (collectively, "Harman") for use in certain foreign proceedings.  This application ("Application") is brought on an *ex parte* basis because *ex parte*

applications are the proper procedure for procuring 28 U.S.C. § 1782 ("Section 1782") discovery, and this court (as well as federal courts elsewhere) has granted such applications in the past. *See In re IPL Do Nordeste, LTDA, For an Order Seeking Discovery Under 28 USC 1782*, No. 12-50624, 2012 WL 444886, at *2 (E.D. Mich. Sept. 25, 2012) (court granted *ex parte* application pursuant to Section 1782 to serve discovery); *IPCom GmbH & Co. KG v. Apple Inc.,* 61 F. Supp. 3d 919, 922 (N.D. Cal. 2014) ("It is common for parties to file *ex parte* [Section 1782] applications, as parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it.") (internal quotations omitted); *Gushlak v. Gushlak*, 486 Fed.Appx. 215, 217 (2d Cir. 2012) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 ex parte."). This Application is supported by the memorandum of points and authorities below and the Declarations of Bernd Allekotte ("Allekotte Decl.") and Peter Nissly ("Nissly Decl.") filed concurrently herewith. A proposed order is submitted herewith the instant Application. The document subpoena and deposition subpoena proposed to be served on Harman Becker-US are attached to this Application as Exhibits 2A and 2B, respectively. The document subpoena and deposition subpoena proposed to be served on Harman International are attached to this Application as Exhibits 3A and 3B, respectively. Additionally, a proposed

protective order to help facilitate the requested discovery is also submitted herewith.

Dated:  October 7, 2019                    McDonald Hopkins PLC


By:  /s/John E. Benko
    John E. Benko (P58874)
    Mark Steiner (P78817)
39533 Woodward Avenue
Suite 318
Bloomfield Hills, MI  48304
Phone:  (248) 220-1352
Email:  jbenko@mcdonaldhopkins.com
    msteiner@mcdonaldhopkins.com
**Attorneys for Applicants**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re Ex Parte Application of BROADCOM CORPORATION, a Delaware corporation, and AVAGO TECHNOLOGIES INTERNATIONAL SALES PTE. LIMITED, a business entity formed under the laws of Singapore<br><br>     Applicants,<br><br><br>for an Order Pursuant to 28 U.S.C. Section 1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings, | MISC. ACTION NO. |

**SUPPORTING MEMORANDUM FOR BROADCOM'S AND AVAGO'S**
***EX PARTE*** **APPLICATION FOR AN ORDER PURSUANT TO**
**28 U.S.C. § 1782 GRANTING LEAVE TO OBTAIN  DISCOVERY**
<u>**FOR USE IN FOREIGN PROCEEDINGS**</u>

# TABLE OF CONTENTS

**Page**

INDEX OF AUTHORITIES ................................................................................ii

I.   SUMMARY OF BASIS FOR APPLICATION ...................................................1

II.  STATEMENT OF FACTS ..............................................................................2

    A.   The Application Parties .........................................................................2
    B.   The German Proceedings Concerning the EP '181 Patent ...................4
    C.   Other Infringement Proceedings Against BMW and Mercedes ..........7
    D.   Applicants' Proposed Discovery ...........................................................8

III. LEGAL ARGUMENT .....................................................................................8

    A.   Legal Standard .......................................................................................8
    B.   The Application Meets The Statutory Requirements
        In Section 1782 ....................................................................................11
    C.   The Supreme Court's *Intel* Factors Strongly Favor Granting
        The Application ....................................................................................14
        1.   First *Intel* Factor: Harman Is Not A "Participant" In The
            Foreign Proceedings .....................................................................14
        2.   Second *Intel* Factor: Applicants Seek Highly Relevant
            Information That Will Assist The German Courts ..................18
        3.   Third *Intel* Factor: No Foreign Discovery Restrictions Bar
            Applicants' Requested Discovery.................................................21
        4.   Fourth *Intel* Factor: Applicant's Discovery Is Narrowly
            Tailored To Avoid Undue Burden ...........................................23

IV. CONCLUSION ...............................................................................................24

# INDEX OF AUTHORITIES

## Cases

<u>Page</u>

*Cryolife, Inc. v. Tenaxis Med., Inc.*,
 No. C08-05124 HRL, 2009 WL 88348 .................................10, 11, 12, 17, 22

*Euromepa S.A. v. R. Esmerian, Inc.*,
 51 F.3d 1095, 1097, 1101 (2d Cir. 1995) ....................................................22

*Heraeus Kulzer, GmbH v. Biomet, Inc.*,
 633 F.3d 591, 597 (7th Cir. 2011) ......................................17, 18, 20, 22, 23

*In re Apple Inc.*,
 2012 WL 1570043 ...........................................................................10, 20, 22

*In re Del Valle Ruiz*,
 18-3226, 2019 WL 4924395 at *5 (2d Cir. Oct. 7, 2019) ......................12, 13

*In re Esses*,
 01 F.3d 873, 876 (2d Cir. 1996) ...................................................................20

*In re Ex Parte Application of Qualcomm Inc.*,
 162 F.Supp. 3d 1029, 1035 (N.D. Cal 2016) ........................................11, 12

*In re Eurasian Nat'l Res. Corp., LTD.*,
 No 18-MC-80041-LB, 2018 WL 1557167 ...................................................21

*In re Gianasso*,
 No. C 12-80029 MISC SI, 2012 WL 651647 ...............................................10

*In re Google Inc.*,
 No. 14-MC-80333-DMR, 2014 WL 7146994 ......................................19, 22

*In re LG Elect. Deutschland GmbH*,
 No. 12-CV-1197-LAB (MDD), 2012 WL 1836283 ......................................9

*In re Minatec Fin. S.A.R.L. v. SI Group Inc.*,
 Civ. No. l:08-CV-269 LEK/RFT, 2008 WL 3884374 ....................13, 20, 22

*In re Ontario Principals' Council*,
 No. 5:13-MC-80237-LHK-PSG, 2013 WL 607351....................................18

*In re Procter & Gamble Co.*,
 334 F. Supp. 2d 1112, 1116 (E.D. Wis. 2004) ...........................................22

*In re Republic of Ecuador*,
 2010 WL 3702427 ..........................................................................9, 10, 18

*In re Roebers*,
 2012 WL 2862122 ........................................................................................14

*In re Varian Med. Sys. Int'l AG*,
 No. 16-MC-80048-MEJ, 2016 WL 1161568 ........................................13, 19

ii

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004) ................................................ 2, 9, 10, 14, 17, 18, 20-24
*Matter of Lufthansa Technick AG,*
   2019 WL 331839 at *2 ................................................................................ 17
*Metallgesellschaft v. Hodapp,*
   121 F.3d 77, 80 (2d Cir. 1997) .................................................................... 23
*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
   376 F.3d 79, 84 (2d Cir. 2004) ...................................................................... 9
*Siemens AG v. Western Digital Corp.,*
   No. 8:13-CV-01407-CAS (AJWx), 2013 WL 5947973 .............................. 17

## <u>Statutes</u>

<u>Page</u>

28 U.S.C. § 1782 ........................................................................... 1, 2, 8-14, 17-24

## I.     SUMMARY OF BASIS FOR APPLICATION

Pursuant to 28 U.S.C. § 1782 ("Section 1782"), Applicants Broadcom Corporation ("Broadcom") and Avago Technologies International Sales Pte. Limited ("Avago") (collectively "Applicants") seek leave to serve Harman International Industries, Inc. ("Harman International") and Harman Becker Automotive Systems, Inc. ("Harman Becker-US") (collectively "Harman") with narrowly tailored discovery that is directly relevant to patent infringement claims Applicants have made against Mercedes and BMW entities in litigation pending in Germany.  In this German litigation, Applicants allege that certain features in the "infotainment" head units contained in the cars sold by Mercedes and BMW infringe a total of six patents Applicants collectively hold.  Applicants understand that these "infotainment" head units are developed primarily by, or in conjunction with, Harman International and/or Harman Becker-US, which are located in this district.  The discovery sought by this Application has not been produced in the German litigation and neither Harman International nor Harman Becker-US is a "participant" in the German proceedings.  Through this application, Applicants seek discovery from Harman regarding infringing aspects of the head units at issue so that Applicants may use the information obtained to prosecute Applicants' infringement claims and to respond to defenses that have been raised in the German actions, or may be raised by the auto manufacturers.

As discussed in more detail below, Applicants respectfully submit that the Application should be granted because the information sought is directly relevant to the German proceedings, and because Applicants have demonstrated that the Application meets the statutory requirements for issuance of the subject subpoenas. The discretionary factors used by Courts when deciding Section 1782 applications as identified in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004), also favor granting the instant Application.  For these reasons and those that follow, Applicants respectfully requests that the Court grant Applicants leave to issue the subpoenas attached as Exhibits 2A, 2B, 3A and 3B.

## II.     STATEMENT OF FACTS

### A.     The Application Parties

Avago is a Singapore entity that is part of the Broadcom Inc. ("Broadcom") family of companies.  Declaration of Bernd Allekotte in Support of Application ("Allekotte Decl."), ¶ 5.  Broadcom, headquartered in San Jose, California, is a global business that designs, develops, manufactures, and supplies a broad range of semiconductor products.  Over the years, Applicants and their affiliates have obtained numerous patents for novel semiconductor technologies and other inventions that they have spent billions of dollars to develop.  Allekotte Decl., ¶ 9. Applicants are the Plaintiffs in the foreign proceedings in which the evidence sought through this Application will be used.

Harman International, a subsidiary of Samsung[1], designs and engineers connected products and solutions for automakers, including connected car systems. Declaration of Peter Nissly in Support of Application ("Nissly Decl."), ¶ 3. Harman International's North American Automotive Headquarters are located at 30001 Cabot Dr., Novi, Michigan—a location within the Eastern District of Michigan. Nissly Decl., ¶ 4. The headquarters, as described in a Harman International press release, is housed in an "188,000 square-foot building with 1,000 employees (focused) on engineering and development of advanced technology solutions for the connected car. . . ." Nissly Decl., ¶ 4, Exh. B. Harman International also claims that these headquarters include "[e]ngineering labs for the advanced Connected Car technologies and platforms, including driver assistance, next-generation navigation and security solutions" as well as "Infotainment design studios for HARMAN and customer co-developed advanced software applications." *Id*. Harman identifies on its website both BMW and Mercedes as among its "Automotive Partners." Nissly Decl., ¶ 8.

Harman Becker-US is a subsidiary of Harman International. Applicants understand that Harman Becker-US may work independently, or in conjunction with, Harman International to develop the head unit products that are the subject of this Application. Harman Becker-US is also located at 30001 Cabot Dr. in Novi,

---

[1] Samsung Electronics acquired Harman International Industries, Inc. in 2017. https://news.samsung.com/global/samsung-electronics-completes-acquisition-of-harman.

Michigan. Nissly Decl., ¶ 6.  Neither Harman International, nor Harman Becker-US are parties in the German patent infringement litigation described below.

### B.      The German Proceedings Concerning the EP '181 Patent

On March 28, 2019, Avago sued Daimler AG and Mercedes-Benz Leasing GmbH in the Mannheim Regional Court in Germany for patent infringement concerning Avago's European Patent No. EP 1 316 181 (the "Mercedes Litigation" and the "EP '181 Patent," respectively).[2]  Daimler AG, headquartered in Stuttgart, Germany, is a multinational automobile manufacturer and Mercedes-Benz Leasing GmbH is a related finance service entity. Allekotte Decl., ¶ 10.  Daimler AG and Mercedes-Benz Leasing BmbH are collectively referred to as "Mercedes."

On July 19, 2019, Avago also sued BMW AG and BMW Bank GmbH for patent infringement of the EP '181 Patent in the same Mannheim Regional Court (the "BMW Litigation").  BMW AG, headquartered in Munich, Germany, is also a multinational car manufacturer and BMW Bank GmbH is a related finance service company of the BMW Group. Allekotte Decl., ¶ 11.  BMW AG and BMW Bank GmbH are collectively referred to as "BMW."

In broad terms, the EP '181 Patent describes and claims a system for

---

[2] In contrast to patent infringement proceedings in United States district courts, Germany has a bifurcated patent litigation system in which separate courts handle questions of patent infringement and patent validity.  The German Regional Courts ("Landgericht," in German) hear patent infringement actions, each of which may address only one patent.  The German Federal Patent Court ("Bundespatentgericht," in German) hears "nullity" actions.  Nullity actions are proceedings brought by a party to challenge the validity of a patent.  Allekotte Decl., ¶ 7.

performing automatic energy management functions in electronic devices that employ what is known as an Ethernet based media dependent interface crossover. Claim 1 is asserted against both Mercedes and BMW and is exemplary of the patented technology. It claims as follows:

> [1]    An energy detect with auto pair select system, comprising:
> > [1.1]    a device (110) that is operable to perform energy detection with auto pair selection;
> > [1.2]    a plurality of wire pairs (130-139) that is communicatively coupled to the device (110); and
>
> [2]    wherein the device (110)
> > [2.1]    generates a qualified energy by considering an energy associated with at least two wire pairs (130-139) within the plurality of wire pairs (130-139);
> > [2.2]    the device (110) uses the qualified energy to determine whether at least one additional device (120) is communicatively coupled to the device (110) via at least one wire pair within the plurality of wire pairs (130-139); and
> > [2.3]    the device (110) performs auto power down when no device is communicatively coupled to the device (110) via the wire pair.

Allekotte Decl. at Ex. A (EP '181 Patent at claim 1).

In the Mercedes Litigation, Avago alleges Mercedes infringes the EP '181 Patent through the use of an infotainment "head unit" that performs navigation, communication and entertainment features in the accused vehicles. As part of its

claims, Avago alleges that a semiconductor chip manufactured by Micrel, Inc.[3] that is contained in the head units is "a device that is operable to perform energy detection with auto pair selection," as recited in the claim element enumerated as element 1.1, above.

In its "Statement of Defense" filed on or about August 1, 2019, Mercedes argues that its head unit does not infringe claim 1 of the EP '181 Patent because software used by the head unit "ensures that it is not possible to switch to the energy detect mode while the MICREL chip is in operation." Allekotte Decl., ¶ 19. Mercedes claims that certain "driver software" developed by a Harman entity for the MICREL Chip "does not provide for the configuration of the registers responsible for such activation." *Id.* In other words, Mercedes argues that the allegedly infringing head unit device is not "a device (110) that is operable to perform energy detection with auto pair selection," as required by claim 1. Harman Becker Automotive Systems GmbH ("Harman Becker-Germany"), a European subsidiary of Harman International, intervened in the Mercedes Litigation after Mercedes advised Harman that Avago had asserted infringement claims that implicated the Harman head units.

In the BMW Litigation, Avago also alleges that BMW infringes the EP '181

---

[3] Micrel, Inc. was acquired in 2015 by Microchip Technology Inc. The complaints in the German Proceedings refer to "MICREL," a term that will be used here to refer to the branded chip appearing in the accused head units.

Patent through the use of an infotainment "head unit" that performs navigation, communication and entertainment features in the accused vehicles.   As in the Mercedes Litigation, Avago alleges that a MICREL chip contained in the head units is "a device that is operable to perform energy detection with auto pair selection."   BMW has not yet responded to Avago's complaint regarding the EP '181 Patent.   BMW's "Statement of Defense," (i.e., response to Avago's complaint) is not due until December 2, 2019.   Allekotte Decl., ¶ 20.   The head units at issue in the BMW Litigation are also manufactured by a Harman entity. Avago expects that the infringement issues presented in the BMW Litigation to be similar to those at issue in the Mercedes Litigation.

### C.      Other Infringement Proceedings Against BMW and Mercedes

As explained in the accompanying Allekotte Decl., Applicants have accused both BMW and Mercedes of infringing their patents in multiple other cases in Germany in which a head unit supplied by a Harman entity is accused of infringement.[4]   Besides the cases involving the EP '181 patent, there are now two such additional cases against BMW, and five such additional cases against Mercedes.   As explained in the accompanying Allekotte Decl., the patents involve graphics processing, networking, and wireless communications that occur within

---

[4] All the cases Applicants have brought against BMW and Mercedes in which a head unit supplied by a Harman entity are collectively referred to as the "German Litigations".   The German Litigations are specifically identified in paragraph 21 of the accompanying Allekotte Decl.

units supplied by Harman and its subsidiaries to Mercedes and BMW. *See* Allekotte Decl., ¶ 22. As with the EP '181 Patent, Harman would have technical documents supporting or refuting the non-infringement defenses in these cases, including documents relating to the litigations that were either, (1) received from the suppliers of accused computer chips in its head units, or (2) provided to BMW and Mercedes.

### D.     Applicants' Proposed Discovery

Applicants seek leave to serve Harman with subpoenas (attached to this application as Exhibits 2A, 2B, 3A and 3B ) for documents and deposition testimony that seek information in narrow categories relevant to the Harman infotainment head units at issue in the German Litigations, as well as information relevant to defenses raised (or that may be raised) by the car manufacturers. Additionally, Applicants seek issuance of this discovery here in the United States because the information sought is either known or possessed by individuals and entities here and discovery cannot be issued to Harman International and Harman Becker-US through the proceedings in Germany.

## III.   LEGAL ARGUMENT

### A.     Legal Standard

"Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in

foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004).  Over time, Congress has "substantially broadened the scope of assistance federal courts could provide for foreign proceedings."  *Id*. at 247-49.  The "twin aims" of Section 1782 are "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts."  *In re Republic of Ecuador*, 2010 WL 3702427, at *1 (quoting *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004)); *see also In re LG Elect. Deutschland GmbH*, No. 12-CV-1197-LAB (MDD), 2012 WL 1836283, at *3 (S.D. Cal. May 21, 2012) (authorizing the requested subpoena under Section 1782 because "our courts favor broad discovery generally.").  Section 1782 provides in part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. ... The order may be made ... upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a).  The statute therefore authorizes a district court to grant a Section 1782 application where: "(1) the discovery sought is from a person residing in the district court to which the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the applicant is a foreign

or international tribunal or an 'interested person.'" *In re Apple Inc.,* 2012 WL 1570043, at *1; *see also In re Gianasso,* No. C 12-80029 MISC SI, 2012 WL 651647, at *2 (N.D. Cal. Feb. 28, 2012) (same); *In re Republic of Ecuador,* 2010 WL 3702427, at *2 (same).

The Supreme Court in *Intel v. Advanced Micro Devices* articulated four non-exhaustive factors to help district courts determine how to exercise their discretion in granting Section 1782 applications, including:

1. whether the "person from whom discovery is sought is a participant in the foreign proceeding";

2. "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";

3. whether the discovery request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and

4. whether the discovery is "unduly intrusive or burdensome."

*Intel*, 542 U.S. at 264-65; *see also In re Apple Inc.,* 2012 WL 1570043, at *1 (identifying same factors); *Cryolife, Inc. v. Tenaxis Med., Inc.,* No. C08-05124 HRL, 2009 WL 88348, at *1-2 (N.D. Cal. Jan. 13, 2009) (same).

As explained below, Applicants' application satisfies the statutory

requirements set forth in Section 1782.  The discretionary factors articulated in *Intel* also weigh in favor of granting the application.

### B.     The Application Meets The Statutory Requirements In Section 1782

Applicant's request for discovery meets all three statutory requirements. *First*, both Harman entities can be "found" in this district for Section 1782 purposes. *See, e.g., Cryolife*, 2009 WL 88348, *2 (holding that the "resides or is found" requirement is satisfied where it was undisputed that the target of discovery had its principal place of business in the district in which the action is brought). Harman International is found in this District.  "When applied to corporations, the word 'found' may safely be regarded as referring to judicial precedents that equate systematic and continuous local activities with presence." *In re Ex Parte Application of Qualcomm Inc.*, 162 F.Supp.3d 1029, 1035 (N.D. Cal 2016) (internal citations omitted).  Here, Harman International states on its website that it has offices in this district, including in Farmington Hills, Novi, and Livonia, MI. Nissly Decl., ¶ 5.    Further, Harman International's press release states that its North American Automotive Headquarters is located in Novi, Michigan—a location in this District—and is housed in "a 188,000 square-foot building with 1,000 employees."    Nissly Decl., ¶ 4, Exh. B.   Harman International is also registered to do business in Michigan, and its wholly owned subsidiary Harman Becker-US' principal place of business is located in this District.   These factors,

when taken together, show that Harman International is found within this District under Section 1782. *Qualcomm.,* 162 F.Supp.3d at 1036 (corporation that availed itself of the jurisdiction, registered to do business in the state, and wholly owned subsidiary's headquarters were located in the district was found in applicable district under Section 1782).

Harman Becker-US is also "found" in this district. Harman Becker-US maintains its principal place of business at 30001 Cabot Dr., Novi, Michigan. Nissly Decl., ¶ 6. Harman Becker-US therefore "resides" and "is found" in this District under Section 1782. *Cryolife*, 2009 WL 88348, *2; *Qualcomm.,* 162 F.Supp.3d at 1035-36.

In addition, both Harman entities are both found in this district for Section 1782 purposes because this Court may properly exercise specific personal jurisdiction over them. In an opinion issued today, the Second Circuit held in *In re Application of Antonio Del Valle Ruiz and Others for an Order to Take Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782* ("*Del Valle Ruiz*"), that the "'resides or is found' language extends to the limits of personal jurisdiction consistent with due process." *Del Valle Ruiz*, No. 18-3226, 2019 WL 4924395, at *5 (2d Cir. Oct. 7, 2019). The *Del Valle Ruiz* court also held that "where the discovery material sought proximately resulted from the respondent's forum contacts, that would be sufficient to establish specific personal jurisdiction

for ordering discovery." *Del Valle Ruiz*, 2019 WL 4924395, at *6. Here, there is no question that the discovery material sought results from respondent's forum contacts. As discussed above and further below, the discovery sought relates to automotive headunit ("infotainment") technology developed in this forum, *i.e.*, Harman's "North American Automotive Headquarters," and for use in vehicles manufactured and sold by Harman's "Automotive Partners," including BMW and Mercedes. *See* Nissly Decl., ¶¶ 4, 8, Exh. B.

*Second*, Applicants seek the requested discovery for use in a "proceeding before a foreign or international tribunal." 28 U.S.C. § 1782(a). Courts throughout the country have already expressly found that German courts qualify as "tribunals" for the purposes of Section 1782. *See, e.g., In re Varian Med. Sys. Int'l AG*, No. 16-MC-80048-MEJ, 2016 WL 1161568, at *3 (N.D. Cal. Mar. 24, 2016) (permitting discovery for use in patent infringement suit pending in Mannheim District Court); *Cryolife, Inc*., 2009 WL 88348, at *2 (permitting discovery for use in patent infringement suit pending in German court); *In re Minatec Fin. S.A.R.L. v. SI Group Inc.*, Civ. No. l:08-CV-269 LEK/RFT, 2008 WL 3884374, at *9 (N.D.N.Y. Aug. 18, 2008) (permitting discovery for use in litigation pending in court in Germany).

*Third,* as patent infringement plaintiffs and the owner of the patents at issue in the German Proceedings, Applicants qualify as an "interested" party. 28 U.S.C.

§ 1782(a); *Intel,* 542 U.S. at 256 ("No doubt litigants are included among ... the 'interested person[s]' who may invoke § 1782"); *In re Roebers,* 2012 WL 2862122, at *3 ("there is no question that Ms. Roeber is an 'interested person' as she is a litigant in the proceeding").

Accordingly, Applicants have satisfied the statutory requirements for an application under 28 U.S.C. § 1782.

## C.   The Supreme Court's *Intel* Factors Strongly Favor Granting The Application

The discretionary factors identified by the Supreme Court in *Intel* also weigh heavily in favor of granting Applicants' request for discovery.

### 1.   First *Intel* Factor: Harman Is Not A "Participant" In The Foreign Proceedings

For the first *Intel* factor, the Court asks whether "the person from whom discovery is sought is a participant in the foreign proceeding."  542 U.S. at 264 (noting that "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782 aid").  This factor arose out of the Supreme Court's concern that a party to foreign litigation would use Section 1782 to obtain discovery in the U.S. that it could just as easily have obtained from the foreign tribunal.  *See id.* (finding that "the need for § 1782(a) generally is not as apparent" when the party from whom discovery is sought is a party to the foreign proceeding

because "[a] foreign tribunal ... can itself order them to produce evidence."). Here, neither Harman entity is a participant in the German Proceedings. Moreover, the concern the Supreme Court addressed regarding a foreign court's ability to obtain information directly from a litigant is not present here because the evidence shows that the custodians of the relevant information are located in this District and not Germany.

Publicly available information indicates that information sought by the discovery requests attached to this Application is located in the Harman facilities in this district. First, Harman International has stated that Novi, Michigan, is the location of its North American Automotive headquarters. Nissly Decl., ¶ 4. As Harman describes it, the Novi facility is the location that focuses on "engineering and development of advanced technology solutions for the connected car". Nissly Decl., ¶ 4, Exh. B. Harman also states that this facility contains "[e]ngineering labs for advanced Connected Car technologies and platforms, including driver assistance, next-generation navigation and security solutions" as well as "Infotainment design studios for Harman and customer co-developed advanced software applications." *Id*. The "head units" at issue in the German Proceedings are part of Harman's "connected car" technologies and "infotainment" systems— all of which Harman represents publicly are being developed in Novi, Michigan at its North American Automotive headquarters. *Id*.

Second, job postings confirm that the Harman facility located in Novi is the location that is involved in development of "head units"—the technology which Applicant asserts infringes the EP '181 Patent. *See* Nissly Decl., ¶ 5.  For example, Harman has posted an advertisement for a job opening on or about June 20, 2019 for a software project manager for its *Head Unit* Display in Novi, Michigan. *Id.* The Harman website also indicates that Mercedes and BMW are significant "Automotive Partners" of Harman. *See* Nissly Decl., ¶ 8.

Third, photos of the head units themselves at issue in the German Proceedings indicate they were likely developed in the United States, or at least in cooperation with engineering teams in the United States.  For example, in the Mercedes litigation, the Complaint contains a side view of the head unit with a production number and technical data.  Allekotte Decl., ¶ 16.  The text appearing on the unit is primarily written in English, and claims compliance with United States regulations such as FCC rules. *Id.*  The Complaint in the BMW litigation includes a similar photo of the head unit at issue in that case.  The technical data of that head unit is also primarily written in English and asserts compliance with FCC rules. *Id.*

In sum, Applicants understand that the software and other technical development materials related to the infringing head units is in the possession of Harman in this district.  Therefore, this factor weighs in favor of granting the

Application.

Importantly however, even if discovery in the United States is not the sole potential source of the information sought by this Application, the Application should still be granted. United States courts routinely grant Section 1782 applications for discovery even from U.S.-based *parties* to litigation pending in Germany. The courts that have granted discovery under Section 1782 have done so, in part, based on the recognition that German courts do not allow the same degree of early discovery as is allowed in the United States. *See, e.g., Matter of Lufthansa Technick AG*, 2019 WL 331839 at *2 ("... although Intervener is a participant in the pending proceedings [in Germany and elsewhere], the lack of effective discovery mechanisms available to Petitioner in those countries weighs in favor of allowing Petitioner to obtain the discovery material via § 1782"); *Heraeus Kulzer, GmbH v. Biomet, Inc.,* 633 F.3d 591, 597 (7th Cir. 2011) (authorizing Section 1782 discovery because German litigant could not "obtain even remotely comparable discovery by utilizing German procedures"); *Cryolife, Inc.,* 2009 WL 88348, at *2-3 (finding that the first *Intel* factor is neutral with respect to litigation in German courts); *Siemens AG v. Western Digital Corp.,* No. 8:13-CV-01407-CAS (AJWx), 2013 WL 5947973, at *2 (C.D. Cal. Nov. 4, 2013) (same). Thus, even if it could be said that the "same" information is available from, e.g., Harman Becker-Germany, the first *Intel* factor is, at most, neutral, as the discovery

procedures available in Germany are not "even remotely comparable" to that in the United States. *Hearaeus* Kulzer, 633 F.3d at 597.

> **2.   Second *Intel* Factor: Applicants Seek Highly Relevant Information That Will Assist The German Courts**

In *Intel*, the Supreme Court advised the courts to "take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. Here, a central issue in the German Litigations is whether Harman's head units contained in Mercedes and BMW's incorporates infringing technology. The subpoenas that are the subject of this Application are narrowly tailored and directly targeted at the specifically infringing technology and the car manufacturer's noninfringement defenses. Because the requested information is only directly relevant to the infringement claims and noninfringement defenses raised (or that may be raised) in the German Proceedings, the requested discovery more than satisfies the discoverability standards applicable to Section 1782 proceedings. *See In re Ontario Principals' Council,* No. 5:13-MC-80237-LHK-PSG, 2013 WL 6073517, at *3 (N.D. Cal. Nov. 8, 2013) (granting application under § 1782 where the discovery requested was narrowly tailored and "of obvious aid to the foreign tribunal"); *In re Republic of Ecuador,* 2010 WL 3702427, at *5 (granting application where applicant "has made a prima facie showing that the information it seeks" has "some relevance" to

the foreign proceeding); *see also In re Google Inc.,* No. 14-MC-80333-DMR, 2014 WL 7146994, at *3 (N.D. Cal. Dec. 15, 2014) (granting application under § 1782 for all requested discovery where the relevancy of a particular request was unclear but the applicant "at least plausibly alleged that the information sought…is relevant to the international proceedings and is not unduly burdensome").

The accompanying Declaration of Bernd Allekotte, a German lawyer with extensive experience in patent law and thorough knowledge of the German Proceedings, shows that the German courts will likely be receptive to the evidence sought by this Application. Allekotte Decl., ¶ 28-31. This is more than sufficient to justify Section 1782 discovery under the circumstances. Indeed, absent "authoritative proof that a foreign tribunal would reject evidence obtained with the aid of Section 1782, courts tend to err on the side of permitting discovery." *In re Varian Med. Sys.*, 2016 WL 1161568 at *4 (internal quotations and citations omitted) (concluding that this fact weighed in favor of discovery because there was "no evidence or case law suggesting that the Mannheim District Court would be unreceptive to the discovery Varian seeks.").

To be sure, many courts have found the receptivity of German courts in allowing foreign discovery for use in German patent litigation, as sought here by Applicants. For example, former Chief Judge Ware of the Northern District of California recognized this receptivity of the German courts:

> Upon review, the Court finds that Nokia has not met its burden of demonstrating that the German courts would be unreceptive to U.S. judicial assistance or that Apple's request is an attempt to circumvent German proof-gathering restrictions .... Nokia presents no evidence to suggest that the German courts would disallow such evidence, once Apple has obtained it.   Rather, Nokia contends only that German rules of procedure do not provide a mechanism for a party to obtain such evidence. However, in recognizing that "[a] foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or tradition" the Supreme Court anticipated situations such as these, and nonetheless found that the objectives of § 1782 compelled discovery.

*In re Apple Inc.,* 2012 WL 1570043, at *2.[5]  The Northern District of California is not the only district that recognizes the receptiveness of German courts to the use of discovery obtained through Section 1782.  *See, e.g., Heraeus Kulzer,* 633 F.3d at 596 ("And there is no indication that the German court…would refuse to admit evidence that Heraeus obtained through U.S. discovery and could not have obtained by utilizing the procedures of German law for evidence gathering"); *In re Minatec Fin. S.A.R.L.,* 2008 WL 3884374, at *7 ("[W]e find neither any rejection nor offense taken by the German tribunals to a stateside discovery order…").

The second *Intel* factor therefore strongly favors allowing the Section 1782 discovery that Avago now seeks.

---

[5] Judge Ware's analysis similarly shows that another *Intel* discretionary factor—whether the discovery is an attempt to circumvent foreign discovery rules—also weighs in favor of granting Qualcomm's *ex parte* application.

### 3.   Third *Intel* Factor: No Foreign Discovery Restrictions Bar Applicants' Requested Discovery

As Mr. Allekotte explains, German courts do not consider evidence obtained through discovery abroad to be contrary to German discovery rules.  Moreover, Section 1782 does not require that the documents and testimony sought be literally discoverable in the foreign courts.  *Intel*, 542 U.S. at 260-63.  Indeed, here, as neither Harman entity is a party to the German Proceedings, the German court has no power to compel them to provide discovery.  Allekotte Decl., ¶ 26-27.

However, *Intel* does allow a district court to consider whether an applicant is seeking in bad faith "to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States."  *Id.* at 265; *see also In re Esses*, 101 F.3d 873, 876 (2d Cir. 1996) ("[O]nly upon authoritative proof that a foreign tribunal would *reject* evidence obtained with the aid of Section 1782 should a district court refrain from granting the assistance offered by the act.") (internal quotations omitted; emphasis in original).  Applicants' Application here is not an effort to "circumvent" discovery procedures in Germany.  Rather, as Mr. Allekotte explains, German courts are often receptive to evidence obtained through foreign discovery procedures, such as Section 1782 proceedings.  Allekotte Decl., ¶ 28-31.

Courts "err on the side of permitting discovery" absent information that the foreign tribunal "would reject information obtained through Section 1782 discovery." *In re Eurasian Nat'l Res. Corp., LTD.*, No 18-MC-80041-LB, 2018

WL 1557167, at *3 (N.D. Cal. Mar. 30, 2018).  Further, various courts have already held that discovery pursuant to Section 1782 for use in German patent proceedings is not barred by any German discovery restrictions.  *See, e.g., In re Google Inc.,* 2014 WL 7146994, at *3 (granting application under § 1782 to take discovery for use in German patent proceeding where the applicant averred that the German courts "can be expected to be receptive to the information obtained by this request" and holding that there is "nothing to suggest that [the applicant] is attempting to circumvent foreign proof-gathering restrictions"); *In re Apple Inc.,* 2012 WL 1570043, at *2 (granting application because opposition did "not [meet] its burden of demonstrating that the German courts would be unreceptive to U.S. Judicial assistance or that [the applicant's] request is an attempt to circumvent German proof-gathering restrictions.").[6]  To the contrary, as noted above, the United States courts have routinely granted applications under Section 1782 for evidence to be used in the German courts.  *See, e.g., Heraeus Kulzer,* 633 F.3d at 597-99; *Cryolife, Inc.,* 2009 WL 88348, at *l, *3-5; *In re Minatec,* 2008 WL 3884374, at*1.

    In light of the Declaration of Mr. Allekotte, the supporting case law, and the

---

[6] *See also Euromepa S.A. v. R. Esmerian, Inc.,* 51 F.3d 1095, 1097, 1101 (2d Cir. 1995) (permitting discovery under Section 1782 and observing that court "can simply refuse to consider any evidence that [1782 applicant] gathers by what might be—under French procedures—an unacceptable practice"); *In re Procter & Gamble Co.,* 334 F. Supp. 2d 1112, 1116 (E.D. Wis. 2004) (holding that "to decline a § 1782(a) request based on foreign nondiscoverability, a district court must conclude that the request would undermine a specific policy of a foreign country or the United States").

absence of any compelling proof that the German courts would reject the discovery that Applicant seeks from Harman, this factor weighs heavily in Avago's favor. *Heraeus Kulzer,* 633 F.3d at 597 ("Once a section 1782 applicant demonstrates a need for extensive discovery for aid in a foreign lawsuit, the burden shifts to the opposing litigant to demonstrate, by more than angry rhetoric, that allowing the discovery sought (or a truncated version of it) would disserve the statutory objectives."); *Metallgesellschaft v. Hodapp,* 121 F.3d 77, 80 (2d Cir. 1997) ("Absent authoritative proof that a foreign tribunal would reject the evidence obtained with the aid of section 1782 ... a district court should not refrain from granting the assistance afforded under the Act based simply on allegations to that effect.") (citations and quotations omitted).   Accordingly, the third *Intel* discretionary factor also weighs in favor of granting Applicant's *ex parte* application.

### 4.  Fourth *Intel* Factor: Applicant's Discovery Is Narrowly Tailored To Avoid Undue Burden

The *Intel* Court noted that "unduly intrusive or burdensome requests may be rejected or trimmed." 542 U.S. at 265.  Here, Applicants' proposed discovery is narrowly tailored to target only the documents and information necessary to prosecute certain infringement claims, and assess and respond to certain car manufacturers' defenses.  Rather than requesting broad, ill-defined categories of documents and information, Applicant's document requests identify documents

and materials that Harman easily should be able to identify, collect, and produce with relatively little effort.  Similarly, Applicants' proposed deposition notice identifies narrow, well-defined deposition topics.  Further, Applicants will commit to working with Harman to address any legitimate confidentiality concerns by negotiating a stipulated protective order that will protect materials produced pursuant to this Application.  The proposed protective order submitted herewith limits use of appropriately designated materials both in the United States and Germany.  Any burden imposed by this discovery is entirely justified under the circumstances.  Thus, this factor, like the other discretionary *Intel* factors, favors granting this application.

## IV.   CONCLUSION

Applicants have satisfied the three statutory requirements of 28 U.S.C. § l782.  The *Intel* factors also weigh in favor of granting this Application. Applicants therefore respectfully request that this Court issue the proposed order authorizing it to serve Harman International and Harman Becker-US with subpoenas in substantially the same form as Exhibits 2A, 2B, 3A and 3B.  In addition, Applicants respectfully request the Court issue the proposed protective order submitted herewith to help facilitate discovery; in the alternative, Applicants respectfully request the Court order that the proposed protective order be served on Harman with the requested discovery to allow for Harman's input and comment

thereof.

Dated:  October 7, 2019                              McDonald Hopkins PLC


By:  /s/John E. Benko
    John E. Benko (P58874)
    Mark Steiner (P78817)
39533 Woodward Avenue
Suite 318
Bloomfield Hills, MI  48304
Phone:  (248) 220-1352
Email:  jbenko@mcdonaldhopkins.com
      msteiner@mcdonaldhopkins.com
**Attorneys for Applicants**